# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

02 APR 29 AM 9: 35

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **C. HAGER & SONS HINGE MANUFACTURING COMPANY,**<br><br>Plaintiff(s),<br><br>vs.<br><br>**HOME INSURANCE COMPANY, et al.,**<br><br>Defendant(s). | ]<br>]<br>]<br>]<br>]  CV-99-N-1663-E<br>]<br>]<br>]<br>]<br>] |

ENTERED
APR 29 2002

### Memorandum of Opinion

This is an action for declaratory judgment and breach of contract. The plaintiff, C. Hager & Sons Hinge, (hereinafter "Hager") seeks a declaration that the defendant insurers are required to defend and indemnify it for damages arising from trichloroethylene ("TCE") contamination at Hager's Oxford, Alabama, manufacturing plant. The court previously granted summary judgment as to defendants Home Insurance Company, United States Fire Insurance Company, and Central National Insurance Company of Omaha. The cause is presently before the court for consideration of summary judgment motions filed by the two remaining defendants, Northern Insurance Company of New York and Maryland Casualty Company. (hereinafter "Northern" and "Maryland")(Doc. 174). Northern and Maryland were granted summary judgment as to Hager's claims for indemnity, and they now seek



summary judgment as to Hager's remaining claims. The sole dispositive issue is whether the insurers have a duty to defend.[1]

Northern and Maryland claim they do not owe Hager a duty to defend because an ADEM Notice of Violation is not a "suit" and because the conclusion they had no duty to indemnify foreclosed Hager's claim to a defense. The second issue will not be addressed because, as discussed below, the court finds the ADEM notice of violation was not a "suit" under Missouri law.

It is undisputed that Hager has not been sued in a court of law with respect to the TCE contamination at its Oxford, Alabama, site. Rather, Hager claims the notice of violation it received from the ADEM was sufficient to trigger the insurers' duty to defend. The policies provide that the insurers have "the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage." *See* Doc. 177, Ex. 2 - 7. In *Aetna Cas. & Sur. Co. v. General Dynamics Corp.*, the Eighth Circuit concluded that EPA demand letters were not "suits" sufficient to trigger an insurer's duty to defend under a similar CGL policy provision. *General Dynamics*, 968 F.2d 707, 713 (8th Cir. 1992)(applying Missouri law).

Hager argues the *General Dynamics* decision has been cast into doubt by *Farmland Industries, Inc. v. Republic Ins. Co.*, 941 S.W.2d 505 (Mo. 1997). In *Farmland*, the Missouri Supreme Court held that damages covered by the CGL policy at issue included

---

[1] The court granted the other insurers' motion for summary judgment as to their duty to defend because Hager was unable to establish they received notice prior to the initiation of this lawsuit. As to the duty to defend, prejudice is presumed when notice is provided so late that the insurer is denied an opportunity to defend the claims against the insured. *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 2001 WL 909018 (Mo. App. Aug. 2001), citing *Rocha v. Metro. Property and Cas. Ins.*, 14 S.W.3d 242, 248 (Mo. App. 2000). Hager presented evidence creating an issue of fact regarding the timing of notice to insurers Northern and Maryland.

2

environmental response costs.  Hager contends the *Farmland* holding is significant because, like Hager, the *Farmland* insured had not been sued but had been required by the EPA and state agencies to conduct significant investigation and remediation activities. However, the *Farmland* court was not called on to interpret the meaning of the word "suit" as it related to the insurers' duty to defend under the CGL policies.  The court's conclusion that the term "damages" included environmental investigation and response costs does not necessarily imply the court would conclude that the term "suit" includes notices of violation. In fact, the Missouri court typically relies on standard English language dictionaries to interpret insurance policy terms in accord with its rule that terms in such policies are to be given their ordinary meaning as reasonably understood by the average layperson. *Farmland*, 941 S.W.2d at 508. Using this method, the term "suit" must be limited to a lawsuit brought in a court of law, in accord with the holding in *General Dynamics*.  *See Webster's Third New International Dictionary* 2286 (1976)(defining "suit" as "an action or process in a court for the recovery of a right or claim," and alternatively, "the attempt to gain an end by legal process."); *Black's Law Dictionary* 1448 (7th ed. 1999)(defining "suit" as "[a]ny proceeding by a party or parties against another in a court of law.")

Hager also argues that the majority of state courts addressing the issue have concluded the duty to defend includes responses to a state or federal notice of violation. Although many state courts have reached different conclusions on this issue,  the *General Dynamics* decision is the most compelling interpretation of Missouri law in absence of an opinion from the Missouri courts.

3

Hager further contends that reliance on *General Dynamics* is misplaced because the *General Dynamics* court based its ruling on *Continental Ins. Co. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d 977 (8th Cir.) (*en banc*), *cert. denied*, 488 U.S. 821 (1988) (NEPACCO) and the Missouri Supreme Court rejected NEPACCO in its *Farmland* decision.[2] However, in determining the meaning of the term "suit," the *General Dynamics* court applied the Missouri rule of law requiring a court to give the terms of an insurance contract their plain and ordinary meaning. Rather than relying on NEPACCO, the court only noted that NEPACCO "strongly supports, if not requires, this approach." *General Dynamics*, 968 F.2d at 713-14. Nothing in *Farmland* abrogated the Missouri rule that insurance contract terms are to be given their plain and ordinary meaning.

Accordingly, Northern and Maryland's motion for summary judgment is due to be granted. A separate order in conformity with this opinion will be entered.

Done, this 26th of April, 2002.

_____
Edwin Nelson
United States District Judge

---

[2] The *General Dynamics* court relied on the NEPACCO decision to support its conclusion that "damages" did not include equitable relief "in the insurance context," and this portion of the *General Dynamics* decision was abrogated when the Missouri Supreme Court overruled NEPACCO in *Farmland* and found that the meaning of "damages" must not be limited to the insurance context and includes equitable relief such as environmental response costs.

4